EDWARD H. THRONE and WILLIAM E. THRONE, Plaintiffs, *v.* THE LEHIGH VALLEY RAILWAY COMPANY, Defendant.

*Negligence — killing of horses by a railroad company — failure to fence the railroad, not the proximate cause — liability of a lessee company under chapter 676 of 1892 — word "agents" defined.*

In an action brought to recover damages resulting from the killing of two horses by the alleged negligence of the defendant, a railroad corporation, in omitting to fence the side of its railroad abutting upon the field from which it was claimed the horses strayed on to the railroad, where they were killed by a passing train, it appeared that prior to the accident the defendant had leased all its property, except its right to exist as a corporation, to another company, and that the defendant did not own and had no interest in any of the rolling stock upon the road.

*Held,* that the damages sustained by the plaintiffs were not caused by the defendant's agents, engines or cars;

That the proximate cause of the injuries to the horses was not the failure to fence the road;

That they were not injured by going from the pasture on to the railroad track, but by the acts of the agents of the lessee company;

That the word "agents," as used in section 32 of chapter 676 of the Laws of 1892, has reference only to the agents of the corporation operating the railroad.

Motion by the plaintiffs, Edward H. Throne and another, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the granting of defendant's motion for a nonsuit at the Monroe Circuit on the 2d day of March, 1894.

*J. A. Stull*, for the plaintiffs.

*Martin Carey*, for the defendant.

Lewis, J. :

This action was brought to recover for the negligent killing of two horses belonging to plaintiffs at Rush, Monroe county, on or about June 29, 1893. The alleged negligence consisted in the omission to fence the sides of the defendant's railroad opposite the field from which it is claimed the horses strayed on to the railroad land and were there killed by a passing train.

It was alleged in the plaintiffs' complaint that in consequence of said negligent omission on the part of the defendant to provide the fences required by statute at the place aforesaid two of plaintiffs' horses, at the time stated, strayed from a pasture on what was known as the Budlong farm on to the defendant's road and were there struck and killed by a passing engine to the plaintiffs' damage of $250. The defense was, in substance, a general denial, and an allegation that if the horses were killed or injured it was done solely by the negligence of the plaintiffs or some person or corporation other than the defendant.

There was evidence showing the organization of the defendant as a railroad corporation, and that its line of road passed through the premises upon which the horses were being pastured in the town of Rush, Monroe county. For the purposes of the trial the following facts were conceded: " That the defendant was at the time of the accident referred to in the complaint, and now is, the owner of the right of way; that the defendant, under lease dated April 14, 1891, leased all its property, real and personal, and franchises, except the franchise to exist as a corporation, to the Lehigh Valley Railroad Company, a foreign corporation, for the period of 999 years from January 1, 1891, and that said lease has at all times continued and

still continues in force; that the said Lehigh Valley Railroad Company by lease dated February 11, 1892, leased all its property, real and personal, and franchises, except the franchise to continue as a corporation, to the Philadelphia and Reading Railroad Company, a foreign corporation, which immediately went into possession of the road and operated it and continued to operate it up to and past the time of the happening of this accident; that at the time the Lehigh Valley Railway Company leased its property to the Lehigh Valley Railroad Company the right of way was practically acquired by the defendant named in this action along the entire line, but the grading for the road was not completed, was under headway; that no track was laid. The grading and construction of the roadbed was in progress at the time of the lease, but that none of the track for the completed railroad was laid at that time; that immediately upon the execution of the lease the lessee went into the exclusive possession of the road and continued and finished the grading and the laying of the track, and together with its lessee, the Philadelphia and Reading Railroad Company, equipped the road and opened it for use on the 1st day of September, 1892; that the defendant in this action constructed none of the road after the lease, laid no track, never had any rolling stock or personal property, never operated the road, had no officers except those necessary to maintain its corporate existence, had nothing to do with the road except to draw its rentals under the lease with the Lehigh Valley Railroad Company.

" That at the time of the accident the railroad was in the possession of the Philadelphia and Reading Railroad Company which was operating it under the lease aforesaid, and that the engines and cars in question, by which it is agreed the injury was inflicted at the time of the accident, were operated by the said Philadelphia and Reading Railroad Company.

" That at the time of the leasing of the road by the Lehigh Valley Railway Company to the Lehigh Valley Railroad Company and at the time of the accident, there was no fence of any kind constructed along the lines of the road across the Budlong farm and never has been since they had acquired the right of way."

The statute making it obligatory upon railroad companies to erect and maintain fences on the sides of their road in force at the time of this accident, was chapter 565, section 32, of the Laws of 1890,

as amended by chapter 367 of the Laws of 1891, as amended in 1892 by chapter 676, section 32, volume 1, page 1390, as follows : " § 32. Every railroad corporation and any lessee or other person in possession of its road shall, before the lines of its road are opened for use, and so soon as it has acquired the right of way for its roadway, erect and thereafter maintain fences on the sides of its road of height and strength sufficient to prevent cattle, horses, sheep and hogs from going upon its road from the adjacent lands. * * * So long as such fences are not made or are not in good repair the corporation, its lessee or other person in possession of its road, shall be liable for all damages done by their agents, or engines, or cars to any domestic animals thereon. When made and in good repair they shall not be liable for any such damages, unless negligently or willfully done. * * * No railroad need be fenced when not necessary to prevent horses, cattle, sheep and hogs from going upon its track from the adjoining lands." This act of 1892 took effect May eighteenth of that year. The next preceding statute upon this subject was chapter 367 of the Laws of 1891, which was passed May 12, 1891. The preceding statute, section 32, chapter 565 of the Laws of 1890, went into effect May 1, 1891.

As stated, on the 14th of April, 1891, at a time prior to the enactment of these statutes, the defendant had leased all its property, real and personal, and franchises, except the franchise to exist as a corporation, to another company. At the time of said leasing section 44 of chapter 140 of the Laws of 1850, as amended by section 8 of chapter 282 of the Laws of 1854, was in force ; it was therein provided that " Every railroad company formed or to be formed, but whose lines are not now open for use, shall, before the lines of such railroad are open, erect and thereafter maintain fences on the sides of their road, of the height and strength of a division fence required by law," etc. The duty of maintaining such fences was, by section 2 of chapter 582 of the Laws of 1864, imposed upon the lessee or lessees of the railroad of any railroad corporation.

It is the contention of the plaintiffs that, notwithstanding the defendant was not, at the time of leasing its road obliged under the statutes then existing to erect line fences, the subsequent acts above referred to imposed that duty upon the defendant. The lines of this railroad were not opened for use until September 1, 1892.

The terms of the statute in force at the time of the leasing would have been fully complied with if the fences had been constructed at any time prior to September 1, 1892. The defendant, therefore, had not neglected any duty imposed upon it by statute at the date of the lease.

It had, at the time of the leasing, acquired the right of way for its roadway, and if the statutes of 1890, 1891 and 1892, referred to, imposed the duty upon the defendant as well as any lessee or other person in possession of the road to erect and maintain fences on the sides of the road, notwithstanding it had, prior to their taking effect, leased its road, then the defendant's negligence, so far as the omission to construct the fences, was established.

The plaintiffs cannot invoke the rule that the defendant was responsible for the continuance of a nuisance existing at the time of the leasing of its road. For, as we have seen, it had not omitted any statutory duty then devolving upon it. The plaintiffs' counsel in his brief states that the trial court held that the statutes enacted after the defendant leased its road imposed upon the defendant equally with its lessee the duty to erect and maintain the fences.

This ruling was as favorable to the plaintiffs as they could wish. At the time the later statutes were passed the defendant was not in possession of the road, had no control over it; it was in the exclusive possession of another company.

It is not entirely clear that the defendant would have had the right to enter upon the roadbed for the purpose of complying with the terms of the statute; but without deciding this question, we think the trial court correctly held that the damages in this case were not done by the defendant's agents, engines or cars. It did not own, neither had it any interest in, any of the rolling stock upon the road. The clause in the statute of 1892, which follows the sentence, " So long as such fences are not made, or are not in good repair, the corporation, its lessee, or other person in possession of its road, shall be liable for all damages done by their agents or engines or cars to any domestic animals thereon," and which reads, " When made and in good repair they shall not be liable for any such damages unless negligently or willfully done," cannot with any propriety be claimed to apply to a party sustaining the relation to the road

this defendant did. We are of the opinion that the word " agents " in the statute has reference only to the agents of the corporation or person operating the road, and that neither the engines nor cars which, in this case, caused the damages, nor the employees operating them can be said to have been the agents of the defendant.

The injuries to these horses were caused by the acts of the employees of the Philadelphia and Reading Railroad Company. (*Miller* v. *The N. Y., L. & W. R. R. Co.*, 125 N. Y. 123.)

The proximate cause of the injuries to the horses was not from a failure to fence the road, nor were they injured in going from the pasture on to the railroad track. They were injured by the acts of the agents of another company.

The authorities to which we are referred by the plaintiffs' counsel, of injuries to animals caused by their straying upon the lands of a railroad company and receiving injuries from other causes than coming in contact with railroad trains, do not seem to have any application to the question involved here. Where, or how, or from what pasture these horses got upon the railroad track, was not very clearly established upon the trial. That question does not seem to have been much considered upon the trial. It was probably assumed that they strayed upon the railroad lands, as claimed by the plaintiffs. We place our decision upon the ground that the plaintiffs failed to show that the injuries to their property were caused by the agents, engines or cars of the defendant.

The motion for a new trial should be denied, and judgment directed for the defendant upon the nonsuit.

BRADLEY and WERNER, JJ., concurred; WARD, J., not sitting.

Motion for a new trial denied, and judgment directed for the defendant on the nonsuit.